```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                    :
JUAN SYLVESTER BARNES
                                    :
    v.                              :   Civil Action No. DKC 12-1994
                                    :
MEDICAL DEPARTMENT, WASHINGTON
COUNTY JAIL, et al.                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this prisoner civil rights action are motions to dismiss filed by Defendants Washington County Sheriff's Office (ECF No. 10) and Detective Tammy Jurado of the Hagerstown, Maryland, Police Department (ECF No. 15). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, these motions will be granted.

**I.   Background**

Plaintiff Juan Sylvester Barnes, a prisoner proceeding *pro se*, commenced this action on July 3, 2012, by filing a complaint alleging federal civil rights violations, pursuant to 42 U.S.C. § 1983, against "Medical Department[,] Washington County Jail," the Washington County Sheriff's Office, Detective Tammy Jurado of the Hagerstown Police Department, and Sergeant John Vanhoy of

the Maryland State Police.  (ECF No. 1).[1]  Concomitantly with the complaint, Plaintiff filed a motion for leave to proceed *in forma pauperis*.[2]

---

[1] The complaint also alleges defamation against the Washington County Sheriff's Office based on its publication in a news bulletin that Plaintiff was "a member of the Bloods [street gang]."  (ECF No. 1, at 12-13).  That claim was previously dismissed for lack of subject matter jurisdiction.  (ECF No. 3, at 1).  The "Medical Department" defendant has not been served and appears to be improperly named.  The intended defendant is apparently the medical services contractor at Washington County Detention Center, which, according to the Washington County Sheriff's Office, is Conmed Healthcare Management, Inc.  (ECF No. 10-1, at 3).  The remaining defendant, Sergeant Vanhoy, is still in the process of being served.  (ECF No. 34).  While the complaint does not contain any specific allegations as to him, other evidence suggests that he was a member of the arrest team.  Plaintiff has filed motions for default judgment against this defendant (ECF No. 32) and the task force to which he is presently assigned (ECF No. 33).  Because Sergeant Vanhoy's response to the complaint is not yet due, these motions will be denied.

[2] Because that motion did not comply with the requirements of 28 U.S.C. § 1915(a)(2), the court directed the finance officer of Washington County Detention Center to file a certificate indicating the average monthly balance and average monthly deposits in Plaintiff's prison account over a six-month period.  Based on the verified inmate account certification that was subsequently filed, the court determined that Plaintiff was able to contribute and directed that he pay an initial, partial payment within twenty-one days and, thereafter, on a monthly basis.  The finance officer was directed to forward these payments to the clerk when sufficient funds were available in the account.  On August 20, 2012, Plaintiff moved for an extension of time in which to pay the initial filing fee.  The court granted that motion on December 6, providing twenty-one days for Plaintiff either to make the initial payment or show cause why the fee should be waived.  Plaintiff responded on December 17, requesting waiver based on a change of circumstance – namely, that his family members were no longer depositing funds into his prison account on a regular basis.  On February 8, 2013, he renewed his motion for leave to proceed *in forma*

The complaint recites that, on January 31, 2012, at approximately 9:27 p.m., in Greenbelt, Maryland, Plaintiff was "tased about 3 times" by a team of police officers effecting his arrest. (*Id*. at 5). He immediately fell to the ground and "screamed in pain." (*Id*.). As Plaintiff was placed in handcuffs, he advised the officers that he "fell on [his] leg that contains a surgical rod" and asked to be taken to a hospital, but was "told to shut up." (*Id*. at 5-6).

Approximately one hour later, "the officers transported [Plaintiff] to Detective Tammy Jurado" of the Hagerstown Police Department. (*Id*. at 6). Plaintiff was "completel[]y almost out of it" because he was "under the influence of [a] controlled substance." (*Id*.). As Detective Jurado transported him to central booking in Hagerstown, Plaintiff "passed out in the car" and had to be "awakened" upon arrival. (*Id*.). Detective Jurado released Plaintiff to the custody of "the booking officer" at the Washington County Detention Center. (*Id*.). When she advised the officer that Plaintiff had been "tased," he asked where the arrest had occurred. Detective Jurado responded that it occurred in Prince George's County, and the officer allegedly stated, "as long as the assault [did not] happen in Hagerstown.

---

*pauperis*. (ECF No. 30). Considering that no payments have been received from the finance office and that a more recent account statement filed in a separate case confirms Plaintiff's claim of reduced funds in his prison account (*see* Civ. No. DKC 13-0281), the renewed motion will be granted.

. . . [they were] not taking [Plaintiff] to the hospital." (*Id.* at 7). Plaintiff was then "booked into jail." (*Id.*).

At approximately 1:00 p.m. the following day, Plaintiff was "taken to the medical department to be processed." (*Id.* at 9). During this examination, he "advised [the] nurses" of the tasing incident and they "asked [him] to pull up [his] shirt" so they could inspect the "taser marks." (*Id.*). Plaintiff was purportedly "shocked" when they told him "there [were] none." (*Id.*). He also advised medical department personnel that he "was concerned about [his] leg" because he "felt the surgical rod moving[,] . . . shifting[,] and clicking." (*Id.*). At some point, Plaintiff asked "to go to the hospital to get [an x-ray] or surgery to remove [the] rod," but "the jail would not even [attempt] to find out what[] [was] wrong with [his] leg." (*Id.*). Instead, "[t]he doctor [kept] giving [him] . . . Tylenol," which was ineffective in abating his pain. (*Id.* at 9-10). Plaintiff asserts that he asked medical staff to obtain his medical records in order to demonstrate that he should be receiving "pain [medications] that the jail considers a narcotic," but the staff has deemed his injury "not emergent." (*Id.* at 10). According to Plaintiff, his "condition is continuing to deteri[or]ate." (*Id.*).

On August 27, the Washington County Sheriff's Office ("WCSO") filed a motion to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 10).  On October 12, Detective Jurado moved to dismiss on the same basis. (ECF No. 15).[3]  Plaintiff filed multiple opposition papers in response to both motions (ECF Nos. 12, 13, 14, 17, 31), and neither defendant filed a reply.

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266,

---

[3] Detective Jurado moved, in the alternative, for summary judgment.  Because the complaint is subject to dismissal for failure to state a claim, it will be considered only as a motion to dismiss.

268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.

**III. Analysis**

While the complaint is far from a model of clarity, it appears to allege § 1983 violations against Sergeant Vanhoy, apparently a member of the arrest team, based on excessive force

and denial of medical treatment, and against the remaining defendants based on the denial of medical care after the arrest. Because neither Detective Jurado nor WCSO was involved in Plaintiff's arrest, the excessive force claims will not be addressed.

The constitutional protections afforded a pre-trial detainee by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

To state a claim for denial of medical care in violation of the Eighth Amendment, a plaintiff must set forth facts which, if proven, would demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires a showing that, objectively, the plaintiff was suffering from a serious medical condition and, subjectively,

the defendants were aware of the need for medical attention, but failed either to provide it or to ensure that the care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

A showing of an objectively serious medical condition alone, however, is not dispositive. The subjective component requires "subjective recklessness" in the face of a serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). Reasonableness of the actions must be judged in light of the risk known to the defendant at the relevant time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (the focus must be on precautions actually

taken in light of suicide risk, not those that could have been taken).

Here, the only conceivable claim against Detective Jurado is that she was deliberately indifferent to Plaintiff's serious medical condition during the transport to Washington County Detention Center. The complaint, however, does not set forth any facts suggesting that she knew or should have known that Plaintiff was in need of medical treatment, much less that she was deliberately indifferent to such need. To the contrary, Plaintiff asserts that he was "out of it" while in her custody due to the fact that he was "under the influence of [a] controlled substance," and that he was asleep for most, if not all, of the trip to Hagerstown. (ECF No. 1, at 6). Moreover, in delivering custody to Washington County Detention Center, Detective Jurado advised the booking officer that Plaintiff had been "tased," and medical staff at that facility evaluated him approximately twelve hours later. Thus, even if Plaintiff was in need of medical care, the complaint reflects that Detective Jurado took reasonable steps to ensure that it was available. Accordingly, Plaintiff's claims against Detective Jurado cannot be sustained.

WCSO is expressly named in only the portion of the complaint alleging defamation. As noted, that claim was previously dismissed for lack of subject matter jurisdiction.

To the extent that Plaintiff seeks to impose liability on WCSO for the acts or omissions of the medical staff at Washington County Detention Center, WCSO contends that it is not responsible for providing medical care to prisoners, and that it could only be liable, based on its general responsibility for conditions at the facility, under a *respondeat superior* theory. As WCSO observes, "there is no respondeat superior liability under § 1983." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Accordingly, Plaintiff's § 1983 claims against WCSO are also subject to dismissal.

## IV. Conclusion

For the foregoing reasons, the motions to dismiss will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge