# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JUAN SYLVESTER BARNES | * |
| Plaintiff | * |
| v | *     Civil Action No. DKC-12-1994 |
| MEDICAL DEPT. WASHINGTON CO. JAIL, et al. | * |
| Defendants | * |

***

## MEMORANDUM OPINION

Pending is Defendant John Vanhoy's Motion to Dismiss or for Summary Judgment. ECF No. 52. Plaintiff opposes the motion.[1] ECF No. 56. The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion shall be granted.

## Background

On March 19, 2013, this court dismissed Plaintiff's claims against Defendants Detective Jurado and Washington County Detention Center.[2] ECF No. 35 and 36. The remaining claim asserted against Sergeant John Vanhoy is related to Plaintiff's arrest and subsequent treatment for injuries sustained during his arrest.

---

[1] Plaintiff was advised regarding the manner in which the motion should be opposed, including submission of affidavits, declarations under oath or other materials contesting the matters asserted by Defendant. ECF No. 53. Plaintiff's Response in Opposition simply requests that Defendant's motion be denied. ECF No. 56. Plaintiff also filed a Motion to Amend Complaint, the content of which is more appropriately construed as a Response in Opposition. ECF No. 55. The Motion to Amend will, therefore, be denied but considered in the context of Defendant's dispositive motion.

[2] Defendant Washington County Medical Department is improperly named and has not been served. The medical services contractor at Washington County Detention Center is Conmed Healthcare Management, Inc., information that was revealed in documents filed by the Washington County Sherriff's Office. ECF No. 10. Plaintiff has not amended the Complaint to include Conmed as a named Defendant, therefore, no further attempts at service on that Defendant have occurred. Plaintiff will be provided an opportunity to amend the Complaint to include Conmed as a Defendant.

Plaintiff Juan Sylvester Barnes ("Barnes") alleges that on January 31, 2012, he was in the laundry room of his apartment complex talking to a stranger when he noticed three red beams of light he recognized as targeting lights used on weapons. Barnes claims he tried to run when he saw the lights, but heard a popping noise and a lot of voices yelling "police." Barnes states he was "tased," fell to the ground, and was placed in handcuffs. ECF No. 1 at p. 5.

Barnes claims he told the officers that his leg contained a surgical rod which may have dislodged when he fell. He states he was screaming in pain, but the officers merely laughed. Five minutes later, one officer told him to hold still so he could pull the Taser prongs out. Barnes alleges he asked to be taken to a hospital, but was told to shut up. He states that after about an hour he was brought to his feet, shackles were placed on his ankles, and he was put into a truck. ECF No. 1 at p. 6.

Defendant Vanhoy states an arrest warrant was issued on January 30, 2012,[3] for Barnes' arrest after he was positively identified by a witness as the person who shot Christopher Lee Follett, who later died of his injuries. The statement of charges against Barnes included charges of second degree murder, first degree assault, and related firearms charges. To facilitate execution of the arrest warrant, the Washington County Warrant Task Force submitted a nationwide Extradition Request to the Office of the State's Attorney for Washington County which was authorized on January 31, 2012. ECF No. 52 at Ex. 1.

Vanhoy received a copy of the murder warrant from the Hagerstown Police Department on January 27, 2012,[4] and, based on information gathered by the Maryland State Police (MSP), plans were made to arrest Barnes at his mother's apartment in Greenbelt, Maryland on

---

[3] The warrant was issued by a District Court Commissioner in the District Court for Washington County, Maryland.

[4] The arrest warrant was not issued until January 30, 2012. ECF No. 52 at Ex. 1, Att. A. It is unclear how Vanhoy received the warrant three days prior to it being issued.

February 1, 2012. An attempt was made to apprehend Barnes before the planned arrest by the Prince George's County Sheriff's Office on January 31, 2012, on an unrelated material witness warrant. When the deputies arrived at Barnes' mother's apartment, however, Barnes jumped from a second story window and fled on foot. A semi-automatic handgun fell from his pants as he fled and was recovered by one of the deputies, but Barnes escaped. ECF No. 52 at Ex. 1.

Vanhoy was a member of the Capital Area Regional Fugitive Task Force that went to Barnes' mother's apartment to begin an investigation. Barnes' mother, Betty Ransom, was interviewed and, pursuant to a search and seizure warrant for the apartment, collected Barnes' property. Ransom revealed that Barnes may have left two of his old cell phones in her apartment and an exigent order for the phones was obtained so that cell tower "pings" could be utilized to locate Barnes. When it was determined that Barnes was still in the community, additional task force personnel and equipment were sent to the area. *Id*.

Barnes was then observed by a member of the task force hiding in a vacant laundry and storage room which was located on the ground level and connected two of the apartment buildings in the complex where Ransom resided. The task force divided into two teams and entered both buildings in order to insure Barnes could not again escape capture. As officers came into the room, carrying a shield labeled "police," they announced "police get on the ground." Officers were also dressed in clothing and using gear identifying them as police and U.S. Marshals. As the primary task force entered the room through one side of the building, Barnes attempted to flee through the back door of the washroom toward the other side of the building. Barnes was intercepted by the secondary task force team and came running back in the direction of the primary team. Barnes was repeatedly instructed to get on the ground, but refused to comply with the orders. *Id*.

Vanhoy asserts he did not use a taser on Barnes, issue any verbal commands to him, or physically contact him before he was tased. The Maryland State Police do not carry tasers and Vanhoy states he did not have a taser in his possession on the day Barnes was apprehended. After Barnes was tased, the prongs were removed from his body by U.S. Marshal Service members and Vanhoy handcuffed Barnes. Barnes was searched by Vanhoy, who then instructed Barnes how to get up from the ground while restrained. Vanhoy further states that no member of the team laughed at Barnes and he never heard Barnes request medical attention, scream in pain, or lose consciousness. Additionally, Vanhoy observed no injuries to Barnes that would require medical attention. Barnes was escorted to a vehicle for transport to the custody of the Hagerstown Police and Detective Jurado was advised that Barnes had been tased. *Id.*

## Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Analysis**

<u>Force during Arrest</u>

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989); *Orem v. Rephann*, 523 F.3d 442, 445-6 (4th Cir. 2008). This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted). Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id; see also Abney v. Coe,* 493 F.3d 412 (4th Cir. 2007) (holding "Fourth Amendment reasonableness is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight."). Further, the right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody. *See Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988). "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996). Moreover, the use of force in preventing the escape of a dangerous suspect is constitutional. *Garner*, 471 U.S. at 11.

Barnes denies jumping out of a second floor window to escape capture by the Prince George's County Police. He asserts the dispute in the instant case concerns the need for use of a taser on an unarmed suspect whose hands were clearly visible when police entered the room.

Additionally, he alleges the taser was deployed repeatedly for "excitement" and was in violation of international rules[5] forbidding use of a taser on an individual wearing a hooded sweatshirt because it increases the intensity of the deployed prongs. Barnes also states that Vanhoy is engaging in a cover-up because he has not revealed the name of the officer who deployed the Taser during his apprehension. ECF No. 55 at p. 1.

Barnes also takes issue with the manner in which the task force entered the room to apprehend him. He claims it was unnecessary for Vanhoy to allow task force members to point weapons with laser sights into the room, scaring Barnes and his companion "half to death." Barnes admits he attempted to flee the room and that he heard the commands "police get on the ground." He does not deny failing to comply with those orders; rather he justifies his attempt to flee based on the fear instilled in him by the laser sights he observed. Barnes suggests that the better practice for Vanhoy to have utilized would have been to call Barnes on his cell phone and have him surrender peacefully, or announce their presence prior to entering the room. Barnes seems to assert that this would have avoided the need for tasers because he would not have attempted to flee. ECF No. 55 at p. 2.

While Barnes denies jumping from a second story window, he does not deny eluding police; nor does he deny attempting to flee when Vanhoy and the task force entered the laundry room where he was found. Even assuming Vanhoy played any role in the decision[6] to deploy tasers to secure Barnes' capture, the undisputed circumstances of Barnes' history of eluding police coupled with his attempt to again escape capture were enough to justify use of non-deadly

---

[5] The court is unaware of any international rules governing the use of tasers based on the clothing worn by a suspect subject to lawful arrest.

[6] Barnes' claim that the name of the officer who actually deployed the taser against him should be revealed is without merit in light of the court's determination that the use of force was justified and constitutionally sound under the circumstances.

force against him. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F. 3d 912, 921 (9th Cir. 2001) (even absence of probable cause for arrest does not grant individual the right to offer resistance). To the extent the use of force was painful or "humiliating"[7] as Barnes describes, those factors do not vitiate the need for the use of force deployed. It is not for this court to second guess the emergent decisions made by police officers in potentially dangerous situations involving the arrest or capture of a felon. *See Elliott*, 99 F. 3d at 644 ("officers need not be absolutely sure . . . of the nature of the threat or the suspect's intent to cause them harm."). There was no bright line crossed in the instant case and Vanhoy is entitled to summary judgment in his favor on the excessive use of force claim against him.

## Medical Claim

Barnes contends that Vanhoy also improperly denied him medical care when it was clear from his conduct that he was in pain. He further alleges that he has suffered permanent injury from the force used including headaches and arthritis of the leg he injured. ECF No. 55. The constitutional protections afforded a pre-trial detainee by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

To state a claim for denial of medical care in violation of the Eighth Amendment, a plaintiff must set forth facts which, if proven, would demonstrate that the actions of the

---

[7] Assuming Barnes' allegation that the officers laughed when he was experiencing the effects of the taser, such conduct, while far from admirable or professional, does not transform the legal use of force to effect an arrest into an actionable constitutional claim.

defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires a showing that, objectively, the plaintiff was suffering from a serious medical condition and, subjectively, the defendants were aware of the need for medical attention, but failed either to provide it or to ensure that the care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

A showing of an objectively serious medical condition alone, however, is not dispositive. The subjective component requires "subjective recklessness" in the face of a serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). Reasonableness of the actions must be judged in light of the risk known to the defendant at the relevant time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (the focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

To the extent Barnes voiced his discomfort when he was tased and complained about his leg hurting, there is no evidence that Vanhoy concluded from those statements that Barnes was in need of immediate medical attention. Where, as here, the alleged medical condition does not

approach a condition so serious that a lay person would recognize the need for medical care, a constitutional claim is not stated. Additionally, Barnes has failed to dispute that Vanhoy informed Hagerstown police that he had been tased after being transported to their custody. In providing information regarding the potential injuries to Barnes from the taser, Vanhoy did not exhibit a callous disregard for Barnes' well-being, nor evidence an intent to deprive him of medical care that might later have been required. Vanhoy is accordingly entitled to summary judgment on the medical claim against him.

   A separate Order granting Vanhoy's Motion to Dismiss or for Summary Judgment follows.

Date: August 13, 2013        /s/
                  DEBORAH K. CHASANOW
                  United States District Judge